IMG-270                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4191
_____

NANCY HERRERA; HERNANDO VILLEGAS;
ESTEFANIA VILLEGAS,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-870-173/174/175)
Immigration Judge: Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 4, 2010
Before:  SCIRICA, SMITH and WEIS, Circuit Judges

(filed: August 20, 2010)

_____

OPINION
_____

PER CURIAM.

        Lead petitioner Nancy Herrera, a native and citizen of Colombia, petitions

for review of an order by the Board of Immigration Appeals ("BIA") affirming an

1

immigration judge's order denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] For the following reasons, the petition for review will be denied.

## I.

Herrera's applications for asylum, withholding of removal, and protection under the CAT are predicated on her claim that she was threatened by guerillas in Colombia on account of her involvement with the "Partido Conservativo" (the Conservative Party) in Colombia and has a well-founded fear of persecution if returned. She testified that as an active party member she spent time handing out food, clothing, and books in rural communities, and recruiting new members to the party. (AR 156.) Around May 2000, Herrera started receiving threatening phone calls from anonymous sources she believed to be guerillas, causing her to quit her party activities. (AR 157-58, 177.) In November 2000, she received a "sufragio" – a written death threat stating that her "turn" was coming. (AR 158.) In March 2001 she received another threat in the form of a Tarot card depicting death left on her desk. (AR 160.) In August 2001, her purse was stolen from her office. Herrera testified that initially she thought this was a common crime and reported it to police, but became convinced that guerillas were responsible when she later received an anonymous phone call in which the speaker told her they had

---

[1] Herrera's husband and daughter, Hernando and Estefania Villegas, respectively, are also citizens of Colombia and are included in her application for asylum and withholding of removal.

all of her identification and had her "in [their] hands." (AR 161.) During this period Herrera became increasingly distraught and depressed, experienced vaginal hemorrhaging, and was ultimately hospitalized to have a cyst removed from her uterus. (AR 161.) She attributed this episode to stress and fear from the threats and decided to flee to the United States. (AR 162.)

The IJ denied relief on the grounds that Herrera's testimony was not credible and that she did not meet her burden of proving past persecution or a well-founded fear of future persecution. The BIA dismissed Herrera's appeal without addressing the IJ's adverse credibility determination, concluding that Herrera had failed to establish eligibility for asylum on the merits. The BIA also concluded that Herrera did not carry her burden of proving her entitlement to withholding of removal, or relief under CAT. This appeal followed.

## II.

We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). The BIA's factual findings are reviewed for substantial evidence and must be treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Sioe

3

Tjen Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (citations omitted). The BIA's conclusions of law are subject to plenary review. See id. at 231. BIA determinations as to whether the burden of proof was met will be upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The Court will reverse only if the evidence not only supports a contrary conclusion, but compels it. Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). In reviewing the BIA's decision, this Court must assume Herrera's credibility because the BIA neither adopted the IJ's adverse credibility determination nor made one of its own. See Kayembe v. Ashcroft, 334 F.3d 231, 234-35 (3d Cir. 2003).

### III.

The BIA agreed with the IJ that the record was insufficient to support a finding of past persecution or a well-founded fear of future persecution on account of a protected ground. The evidence in this case does not compel a contrary conclusion. The BIA explained that because Herrera was never physically threatened or harmed while in Colombia, and had received no specific threat of harm if she returned, she failed to meet her burden of establishing past persecution or a well-founded fear of future persecution. This conclusion is "grounded in the record" and consistent with cases holding that asylum may be denied where threats "failed to result in any physical violence or harm to the alien." Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006); see also Li v. Att'y

4

Gen., 400 F.3d 157 (3d Cir. 2005) ("unfulfilled threats" of physical mistreatment not concrete or imminent enough to constitute past persecution). Moreover, although Herrera believed the threats were from guerillas, she was not able to establish who the threats were from, and thus that they came from an individual that the government of Colombia was "unable or unwilling to control." Myat Thu v. Att'y Gen., 510 F.3d 405, 413 (3d Cir. 2007) (internal quotations and citations omitted). The BIA also noted that Herrera returned to Colombia from the United States on two occasions after the threats began in 2000. Given that testimony, the BIA did not err in concluding that Herrera failed to establish a reasonable fear of future harm in Colombia. See Jean v. Gonzalez, 461 F.3d 87, 91 (1st Cir. 2006) ("[Petitioner's] willingness to return voluntarily to Haiti on multiple occasions undermines the contention that Jean experienced persecution and has a well-founded fear of persecution there.").

**IV.**

Because substantial evidence supported the BIA's decision to deny Herrera's application for asylum, it follows that the denial of her application for withholding of removal was also supported by substantial evidence. Accordingly, we will deny the petition for review.

5